In re MONTEREY HOUSE, INC., Monterey House No. 16, Inc., Monterey House Operating Co., Monterey House U.S.A., Inc., Monterey House Missouri, Inc., Monterey House Franchise Corp., Debtors.

HOUSTON AVOCADO COMPANY, INC., Murphy Tomato Company, Inc., Tom Lange Co., Inc., Magnolia Fruit & Produce Co., Inc., Kalil Produce Company, Mendelson-Zeller Company, Inc. and Calavo Growers of California, Movants,

v.

MONTEREY HOUSE, INC., et al., Respondents.

Bankruptcy Nos. 86–02146–H2–11, 86–02148–H1–11, 86–02145–H2–11, 86–02147–H1–11, 86–02149–H2–11 and 86–02144–H2–11.
(Consolidated Under Bankruptcy No. 86–02144–H2–11).

United States Bankruptcy Court, S.D. Texas, Houston Division.

Oct. 20, 1986.

---

Susan J. Brandt, Houston, Tex., for PACA Claimants.

Larry Huelbig, Ed Rothberg, Houston, Tex., for Monterey House, et al.

David B. Foltz, Jr., Stephen W. Lemmon, Houston, Tex., for Lending Institution.

Jarrell D. McDaniel, Houston, Tex., for Lending Institution.

## MEMORANDUM OPINION

R.F. WHELESS, Jr., Bankruptcy Judge.

This matter comes before the Court on the Motion of Houston Avocado Company, Inc., Murphy Tomato Company, Inc., Tom Lange Co., Inc., Magnolia Fruit & Produce Co., Inc., Kalil Produce Company, Mendelson-Zeller Company, Inc. and Calavo Growers of California ("PACA Claimants") for Relief From Stay of Act Against property. The motion asserts that the PACA Claimants are beneficiaries of a floating nonsegregated statutory trust on all of the debtors' perishable agricultural commodities received, products derived from them, accounts receivable, and proceeds; it asserts this statutory trust claim under the Perishable Agricultural Commodities Act of 1930 (PACA) and the 1984 PACA Amendments. After considering the evidence presented at the hearing held August 8, 1986, this Court finds that all the requirements for recovery under PACA have been met and that the PACA Claimants are entitled to recover from the trust fund.

On March 10, 1986, Respondents, Monterey House, Inc., et al (hereinafter referred to as "Monterey House"), filed voluntary petitions under Chapter 11 of the Bankruptcy Code. Monterey House is a corporate enterprise involving five corporations, nine restaurants, and six operating centers. As a debtor-in-possession it continues to conduct its business of retailing Mexican food through restaurant outlets in Oklahoma and wholesaling Mexican and non-Mexican food through a food service division by means of interstate and intrastate commerce. Under PACA, all persons who deal in perishable agricultural commodities in interstate commerce are required to hold a license as a prerequisite to doing business and are required to do business pursuant to regulations issued by the Secretary of Agriculture. In 1973 Monterey House obtained a PACA license which was issued to it under its former name, Monterey House Commissary Corporation, and which it has renewed through August 21, 1986. It has voluntarily subjected itself to PACA and the PACA Amendments.

The PACA Claimants are business entities which are engaged in buying or selling, in wholesale or jobbing quantities, perishable agricultural commodities in interstate commerce. Each movant sold such commodities to Monterey House in either the year 1985 or 1986 or both; however, none has been paid. As required by the statute, each PACA Claimant notified Monterey House and the United States Department of Agriculture (USDA) that it would preserve its trust claim under PACA and the PACA Amendments. The PACA Claimants requested that this Court cause to be released to them funds which were segregated by agreement of the parties and which represent the aggregate of their claims.

Because the PACA Amendments are a relatively recent addition to the 1930 Act, there are few cases which have been decid-

ed under them; however, *In re Fresh Approach, Inc.*, 51 B.R. 412 (Bankr.N.D.Tex. 1985) provides a thoughtful analysis of the interplay of PACA and the Bankruptcy Code and serves as an excellent guideline. This Court will look also to the legislative history of the PACA Amendments, PACA's parallel statute, i.e. The Packers and Stockyards Act of 1921, as amended, 7 U.S.C. 196, (PSA), and the cases under each.

■ Monterey House argued that the trust created under the PACA Amendments is not a statutory trust, but simply a statutory lien. We disagree. Monterey House refers this Court to *U.S. v. Randall*, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971). In *Randall*, the debtor-in-possession (DIP) was ordered by the Court to open three separate bank accounts for its general, payroll, and tax indebtednesses and to make appropriate disbursements from those accounts. The money for withheld taxes was to be paid into the tax account and withdrawals were allowed only for payment of taxes and welfare obligations. The DIP withheld the income from its employees for income and social security taxes, but did not pay the taxes or put funds in the tax account. The Internal Revenue Service (IRS) argued that the funds were a trust in favor of the U.S. because 26 U.S.C. § 7501(a) stated: "Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the U.S., the amount of the tax so collected or withheld shall be held in a special fund in trust for the U.S."

The Court declined to give the U.S. special priority and stated that its decision was in accord with those decisions holding that the specific priorities granted by Congress in the Bankruptcy Act govern generalized statutes giving the U.S. priority in a wide range of situations (emphasis added).

In this case the claims are not claims of the U.S., but are claims of sellers who remain unpaid after the DIP has used commodities furnished by them as collateral to other creditors.

The two cases can be distinguished in another way. In *Randall* the DIP never

deposited funds in the tax account. Although it agreed to do so, the DIP never created a trust res, so the U.S. was left with a tax claim subordinated to administrative expenses. The trust fund under the PACA Amendments is not a segregated fund created by the debtor, but is a non-segregated floating trust which hovers over not only the perishable commodities, but products made from them, the accounts receivable and proceeds of them. When the Amendments were passed, Monterey House acquired a PACA trust in favor of all unpaid sellers of perishable commodities.

Judge Ford appears to have assumed that the PACA trust is a federal statutory trust. *In re Fresh Approach, Inc., supra,* at 418. His assumption is well supported by legislative history. H.R.Rep. No. 98–543, 98th Cong., 1st Sess. 4 (1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News 405 discusses impressing a trust on all perishable agricultural commodities and all inventories of food or other products derived from perishable agricultural commodities and any receivables or proceeds from the sale of such commodities or products. It further states that the statutory trust requirements will not be a burden to the lending institutions. They will be known to and considered by prospective lenders in extending credit. Throughout 49 Fed.Reg. 45, 735–742 (1984) the fund is referred to as a trust and PACA claimants are referred to as beneficiaries. One such section states that the purpose of the amendments is to implement Pub.L. 98–273 ... by which Congress amended the PACA to impress a statutory trust on perishable agricultural commodities received by commission merchants, dealers, and brokers for the benefit of suppliers, sellers, or agents who have not been paid. 49 Fed.Reg. 45, 735 (1984).

The legislative history of the PSA also contains references to the statutory trust which the PSA impresses on meat packers. Representative Thone, the principal sponsor of the Amendments to the Act, stated that the trust provision of the PSA was central to the amendment. Without it, a

packer would be able to commit as collateral to a third party property for which he had not paid which would have the effect of allowing the third party to stand ahead of the producers. 122 Cong.Rec. 12864 (daily ed. May 6, 1976) (statement of Rep. Thone). *See also:* 122 Cong.Rec. 18825 (June 17, 1976).

The PSA and its legislative history was discussed in *In re Gotham Provision Co., Inc.*, 669 F.2d 1000 (5th Cir.1982). That Court stated that the PSA created a comprehensive framework for the protection of the interests of livestock producers in their dealings with packers. One part of the framework was the creation of a statutory trust for the benefit of unpaid cash sellers. *Id.* at 1008. The Court held that, therefore, so long as cash sellers remained unpaid for their livestock sold to a packer ..., that packer must hold his inventories, accounts receivable and proceeds derived from cash sales for the benefit of the cash sellers until such time as they are fully paid. *Id.* at 1010.

In *In re Frosty Morn Meats, Inc.*, 7 B.R. 988, 1005 (M.D.Tenn.1980) the Court held that the trust provision of the PSA did not create a statutory lien invalid against the trustee in bankruptcy, but rather it provided for a statutory trust fund which was not an asset of the bankrupt's estate. *See also: In re G & L Packing Co., Inc.*, 20 B.R. 789 (Bankr.N.D.N.Y.1982); *Hedrick v. S. Bonaccurso & Sons, Inc.*, 466 F.Supp. 1025 (E.D.Pa.1978).

Because of these considerations, this Court finds that by enacting the PACA Amendments, Congress intended to and did create a floating nonsegregated statutory trust which attaches to all perishable agricultural commodities, all inventories of food or other products derived from perishable agricultural commodities, accounts receivable and proceeds from the sale of such products.

The next determination to be made is whether the trust assets are property of the estate; if so, the PACA Claimants have no priority over other encumbrancers. For the following reasons this Court finds that the trust is not property of the estate. The legislative history of the PACA Amendments contains references to priority of sellers in the disposition of funds and assets of the buyer, and the distribution of trust funds to produce accounts not to other creditors in the event of business failures. *See:* H.R.Rep. 98–543, 98th Cong., 1st Sess. 9, 13–15, *reprinted in* 1984 U.S. Code Cong. & Ad.News 413, 416–18; 49 Fed.Reg. 45, 736 (1984). None is more clearly directed to this situation that 49 Fed.Reg. 45, 738 (1984) which states that if a buyer or receiver declares bankruptcy ... trust assets are not to be considered part of the estate to be distributed to other creditors or sold unless all trust beneficiaries have been paid; this follows the precedent of the similar statutory trust imposed on certain assets of meat packers, after which the statutory trust of the PACA has been patterned.

In discussing this point, Judge Ford stated: "That the corpus of a trust is not property of the estate is so widely accepted as to be beyond dispute." *In re Fresh Approach, Inc., supra,* at 419. He went on to state that the rule is elementary that the estate succeeds only to the title and rights in the property that the debtor possessed, although the trustee is armed, of course, with special rights and powers conferred upon him by the Code itself. Therefore ... the estate will generally hold such property subject to the outstanding interest of the beneficiaries. *Id.* at 419 citing 4 *Collier on Bankruptcy*, 541.13 at 541–66 (15th Ed. 1983). *See also: Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962, 968 (5th Cir.1983); *Matter of Quality Holstein Leasing*, 752 F.2d 1009, 1012 (5th Cir.1985); *In re Kennedy & Cohen, Inc.*, 612 F.2d 963, 965 (5th Cir.1980), *cert. den. sub. nom., Wisconsin v. Reese*, 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980).

In discussing the interplay of PACA and the Bankruptcy Code, Judge Ford acknowledged that little caselaw existed on that subject, therefore, he relied on analogies drawn to similar rights involving other statutes. He discussed the rights of beneficiaries of constructive trusts comprising assets held by debtors or trustees in bank-

ruptcy and stated that much has been written about that, and the cases have consistently held that the estate's interests are subordinate to the claims of beneficiaries. *See: In re Fresh Approach, Inc., supra,* at 419.

He also relied on the trust provision of the PSA which was expressly mentioned by Congress in its analysis of Bankruptcy Code § 541(d): Section 541 also will not affect various statutory provisions that give a creditor of a debtor a lien that is valid outside as well as inside bankruptcy, or *that creates a trust fund for the benefit of creditors of the debtor. See Packers and Stockyards Act section 206, 7 USC 196.* H.R.Rep. No. 95–595, 95th Cong. 1st Sess. (1977) 368, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5868 (emphasis added). *In re Fresh Approach, Inc., supra,* at 420.

■ Monterey House urged the Court to find that the PACA Claimants violated the automatic stay provision of 11 U.S.C. § 362 when they sent notices of intent to preserve their rights under PACA. Since the PACA Claimants were required by the statute to file their notices of intent to preserve rights within 30 days after payment was due, since their trust claims would have been unperfected absent the filing of the notice, and since the trust fund is not property of the debtors' estate, this Court holds that the PACA Claimants were not obligated to obtain a lift of stay before filing their notices.

■ The final determination to be made by this Court is whether an award of interest and attorneys' fees is proper under PACA. There are no cases on point under PACA; however, there are cases under PSA. In *In re G & L Packing Co., Inc.,* 20 B.R. 789 (Bankr.N.D.N.Y.1982) the Court found that the claimants were entitled to prejudgment interest at the legally permissible rate and to postjudgment interest until all sums owing were paid. The prejudgment and postjudgment interests were to be measured from one day following the "date of purchase" until the date of formal satisfaction and general release for both purchase price and all awarded interest.

*Id.* at 809. The debtor appealed the award of prejudgment interest which the District Court upheld.

In *Pennsylvania Agricultural Cooperative v. Ezra Martin, Co.,* 495 F.Supp. 565 (M.D.Pa.1980), the Court found that the provisions of the PSA created a statutory trust "until full payment has been received" by unpaid sellers and then found that "full payment" included the principal amount, or purchase price, prejudgment interest on the amount owed from the date following delivery and acceptance of livestock, and costs incurred by suppliers in seeking to enforce their rights.

In a currently unreported opinion, the Bankruptcy Court in New Jersey relied on the reasoning in *Martin, supra,* and awarded prejudgment interest as well as attorneys' fees to unpaid cash sellers of livestock. *In re Great American Veal, Inc.,* No. 82–1029 (Bankr.N.J. Oct. 28, 1982).

Therefore, although there are no cases on point under PACA, but considering the cases under PSA, this Court finds that it is appropriate to award prejudgment interest, postjudgment interest, and attorneys' fees under PACA.

Accordingly, it is:

ORDERED, ADJUDGED and DECREED that the PACA Claimants' Motion for Relief From Stay of Act Against Property filed in the above-referenced bankruptcy case shall be and is hereby GRANTED. Further, it is:

ORDERED, ADJUDGED and DECREED that the PACA Claimants have valid trust claims under the PACA Amendment against Monterey House, and that they are beneficiaries of a trust created by the PACA Amendments on all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products (PACA Trust). Further, it is:

ORDERED, ADJUDGED, and DECREED that the PACA trust is not property of the estate and is held by Monterey

House subject to the outstanding interest of the PACA Claimants. Further, it is:

ORDERED, ADJUDGED and DECREED that the PACA Claimants' trust claims have priority over the secured and unsecured claims of other encumbrancers. Further it is:

ORDERED, ADJUDGED and DECREED that the automatic stay should be lifted to allow the PACA Claimants to receive immediate distribution of the funds held in the Trust Account established at First City according to the following distribution:

| | |
|---|---|
| Houston Avocado | $ 14,651.50 |
| Murphy Tomato | 22,143.50 |
| Tom Lange | 19,892.40 |
| Magnolia Fruit & Produce | 9,656.60 |
| Kalil | 4,970.00 |
| Mendelson-Zeller | 16,104.00 |
| Calavo | 64,902.00 |
| Total | $152,320.00 |

together with their prorata shares of all interest which has accrued since April 23, 1986 on that account. Further, it is:

ORDERED, ADJUDGED and DECREED that the PACA Claimants are entitled to prejudgment interest and post-judgment interest as part of their trust claims with priority over all other creditors of the debtors' estates at an interest rate to be established by the Court. Further, it is:

ORDERED, ADJUDGED and DECREED that the PACA Claimants shall receive attorneys' fees and reasonable costs as part of their trust claims with priority over all other creditors of the estate, but that the amounts of these costs and attorneys' fees shall be established at a subsequent hearing to be held before this Court on the 15th day of December, 1986 at 10:00 o'clock a.m. Finally, it is:

ORDERED, ADJUDGED and DECREED that First City shall be and is hereby ordered to disburse the funds held in the trust account to the PACA Claimants in the amounts described above, and thereafter retain the remainder of the funds in a segregated, interest-bearing account to be used to pay the PACA Claimants' interest and attorneys' fees.