In re W.L. BRADLEY
COMPANY, INC., Debtor.

Bankruptcy No. 86–01936G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 29, 1987.

Jeffrey M. Chebot, Philadelphia, Pa., for Sunkist Growers, Inc.

Kevin W. Walsh, Adelman Lavine Gold & Levin, Philadelphia, Pa., for debtor W.L. Bradley Co.

## MEMORANDUM OPINION

BRUCE FOX, Bankruptcy Judge:

The issue in this case is whether a successful claimant under the trust provisions of the Perishable Agricultural Commodities Act, as amended, 7 U.S.C. § 499e(c)(2) ("PACA"), is entitled to prejudgment interest on its trust claim and reasonable attor-

ney's fees for prosecuting a lawsuit to enforce its rights under the trust. For the reasons set forth below, I hold that such a claimant is entitled to prejudgment interest commencing upon the date of default absent persuasive countervailing equitable considerations. I also conclude, however, that a PACA claimant is not entitled to attorney's fees unless there is a contractual basis for such an award.

### I.

The debtor, W.L. Bradley Co., Inc., filed a voluntary petition under chapter 11 of the Bankruptcy Code on April 18, 1986. On December 22, 1986, Sunkist Growers, Inc. ("Sunkist") filed a motion "for relief from the automatic stay under section 362(a) and for turnover of property not part of debtor's estate; and for abandonment and possession of trust corpus under section 554(b) and for interest and attorney's fees." Sunkist asserted that it held a perfected interest as a trust beneficiary in a non-segregated, floating trust pursuant to PACA and that it was entitled to immediate payment of $37,585.90, representing the amount owed by the debtor for the fruit Sunkist shipped to the debtor prepetition.

After conducting a hearing on the motion, I issued an opinion and order: (1) finding that the debtor was holding $37,-585.90 in trust for Sunkist; (2) granting Sunkist relief from the automatic stay; and (3) directing the debtor to promptly pay the trust funds to Sunkist. *In re W.L. Bradley Co.*, 75 B.R. 505 (Bankr.E.D.Pa.1987). (*Bradley I*).[1]

At the hearing on Sunkist's motion, the parties agreed that Sunkist's request for interest on the unpaid trust funds, attorney's fees and costs would be considered at a later hearing. That hearing was held on August 12, 1987.

### II.

PACA establishes a trust for the benefit of all unpaid suppliers or sellers of perisha-

---

1. The *Bradley I* opinion contains a full statement of the underlying facts in this case and a discussion of the purposes and operation of PACA. In the interest of economy, the facts and discussion will not be repeated herein.

ble agricultural commodities or agents involved in the transaction which, if properly perfected, exists "until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents." 7 U.S.C. § 499e(c)(2). The heart of Sunkist's argument in this case is that the statutory term "full payment" encompasses prejudgment interest and attorney's fees. In support of its claim, Sunkist cites one reported PACA decision. *In re Monterey House*, 71 B.R. 244 (Bankr.S.D.Tex.1986). Because cases under the trust amendments to the Packers and Stockyards Act, 7 U.S.C. § 196 ("PSA"), provide guidance in construing PACA, *see Bradley I*, 75 B.R. at 509, Sunkist also relies on two reported PSA decisions. *Pennsylvania Agricultural Cooperative Marketing Association v. Ezra Martin Co.*, 495 F.Supp. 565 (M.D.Pa.1980); *In re G & L Packing Co.*, 20 B.R. 789 (Bankr.N.D.N.Y.1982), *aff'd*, 41 B.R. 903 (N.D.N.Y.1984).

I first address the issue of prejudgment interest.

Since Sunkist's claim arises under a federal statute, the availability of interest is governed by federal law. *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270 (3d Cir.1987). The general federal interest statute, 28 U.S.C. § 1961, is silent on the question of prejudgment interest. This silence, however, is not determinative. "Congress has not by its silence [in 28 U.S.C. § 1961] ruled out the award of prejudgment interest. *Poleto*, at 1274. Nor is the absence of a provision in PACA concerning prejudgment interest controlling:

> The failure to mention interest in statutes which create obligations has not been interpreted by [the Supreme] Court as manifesting an unequivocal congressional purpose that the obligation shall not bear interest. For in the absence of an unequivocal prohibition of interest on such obligations, [the Supreme] Court has fashioned rules which granted or denied interest on particular statutory obligations by an appraisal of the congressional purpose in imposing them and in the light of general principles deemed relevant by the Court.

*Rodgers v. United States*, 332 U.S. 371, 373, 68 S.Ct. 5, 7, 92 L.Ed. 3 (1947) (citations omitted), *quoted in Poleto*, at 1274. Similarly, the Third Circuit Court of Appeals instructs that the Congressional purposes behind the statutory enactment be considered in order to determine whether those purposes would be furthered by imposition of prejudgment interest. *Poleto*, at 1275.

As I previously observed, the PACA trust provisions were enacted "to increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them." *Bradley I*, 75 B.R. at 509, *quoting* H.R. No. 98–543, 98th Cong., 1st Sess. 3 (1983) ("House Report"). The legislative history identifies at least two conditions in the perishable agricultural commodities industry which dictated the need for increased protections for sellers: (1) prior to 1983, there had been an increase in the number of instances in which buyers had failed to pay for produce or had made "slow payments;" and (2) many sellers are small businesses which cannot survive if they suffer significant losses or "delays." House Report at 3. Certainly, the cornerstone of the PACA trust provisions is the trust beneficiary status which Congress accorded sellers, suppliers and agents. The trust renders the beneficiary's claim superior to any security interest in inventory held by the buyer's secured lender. *In re Prange Foods*, 63 B.R. 211, 214 (Bankr.W.D.Mich.1986). If the desire to minimize the risks of a total loss might not, by itself, justify the award of prejudgment interest, the legislative history demonstrates that Congress was concerned not only with a seller's ultimate ability to enforce a claim, but also the speed with which the claims are paid:

> The Committee believes that the statutory trust requirements will not be a burden to the lending institutions. They will be known to and considered by prospective lenders in extending credit. *The assurance the trust provision gives that raw products will be paid for promptly* and that there is a monitoring system

provided for under the Act will protect the interests of the borrower, the money lender, and the fruit and vegetable industry.

House Report at 4 (emphasis added).

The Congressional concern for prompt payment of PACA trust obligations convinces me that the grant of prejudgment interest will fulfill the legislative purposes of the statute, by denying to the purchaser any benefit to be derived from slow payment. Moreover, if payment is not made promptly, the harm to the trust claimant will be ameliorated partially by the prejudgment interest. *See generally Arco Pipeline Co. v. SS Trade Star*, 693 F.2d 280 (3d Cir.1982) (purpose of prejudgment interest is to reimburse the claimant for the loss of the use of its funds from the time of the loss until the entry of judgment). As a result, I am in agreement with the result of *Monterey House* and I hold that a successful PACA claimant is entitled to prejudgment interest.[2]

The debtor contends that if prejudgment interest is awarded, interest should run only from December 23, 1986, the date Sunkist initiated proceedings in this court to compel payment of the trust benefits and not from the date of default. The debtor emphasizes that there was no evidence that there was a course of dealing between the parties to assess interest on delinquent invoices and that Sunkist waited approximately eight months before filing suit for payment. I am not persuaded by these arguments.

I accept the debtor's premise that the award of prejudgment interest is derived from the court's equitable powers. *Marshall v. Burger King Corp.*, 509 F.Supp.

353 (S.D.N.Y.1981). *See also Pension Benefit Guaranty Corp. v. Greene*, 570 F.Supp. 1483 (W.D.Pa.1983); *Nedd v. United Mine Workers*, 488 F.Supp. 1208 (M.D. Pa.1980). Thus, notwithstanding the strong statutory policy supporting the award of prejudgment interest in PACA cases, there could be circumstances in which the award of interest would be inequitable. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655, 103 S.Ct. 2058, 2062, 76 L.Ed.2d 211 (1983) (in light of purposes of the patent laws, prejudgment interest under 35 U.S.C. § 284 should "ordinarily" be awarded); *Schering Corp. v. Precision-Cosmet Co.*, 614 F.Supp. 1368, 1383 (D.Del.1985) (prejudgment interest awarded in patent case where no facts established to show the award would be "inappropriate").

In this case, there is nothing to convince me to exercise any discretion I may have to deny Sunkist prejudgment interest. The absence of a course of dealing or contract right to interest is immaterial. The right to prejudgment interest in this case is ultimately derived from the statute and stands independent of any express or implied agreement of the parties. Nor do I find the eight month delay inequitable to the debtor. First, I observe that eight months is not an unduly lengthy period to refrain from instituting suit. Moreover, the debtor suffered no harm and may even have benefited from the delay. During the eight month period, the debtor retained the use of the trust funds and had potentially valuable time to attempt to formulate a chapter 11 reorganization plan. In these circumstances, an award of prejudgment interest is fully warranted, running from the date of default.[3]

---

2. The debtor suggests that the statutory term "full payment" be construed with reference to the regulations issued under PACA by the U.S. Department of Agriculture. The regulations define the term "full payment promptly" as "payment for produce purchased by a buyer, within ten days after the day on which the produce is received...." Emphasizing the agency regulation's reference to "produce purchased," the debtor argues that the statutory term "full payment" should be construed narrowly to mean only the principal debt (*i.e.*, the invoice sales price). However, as Sunkist correctly points

out, the regulation is merely designed to determine the default date; it does not define what constitutes full payment if payment is not prompt. Thus, the regulation is not probative on the issue at bench and it is appropriate to determine the propriety of prejudgment interest by reference to the statute's underlying purposes.

3. Sunkist seeks interest at the statutory rate set forth in 28 U.S.C. § 1961. Although the debtor contended at oral argument that the applicable rate should be six percent, it has apparently

### III.

The debtor's objection to Sunkist's request for an award of attorney's fees is on much firmer footing. Sunkist argues that a payment can be "full" only if it is reimbursed for its outlay of attorney's fees and that such a conclusion is consonant with the statutory purposes of PACA. As explained below, however, the propriety of an award of attorney's fees to a prevailing party under a statute which is silent on the issue, unlike the inquiry into prejudgment interest, is not a matter of evaluating whether the award is consistent with the statute's purposes.

The case which is controlling on the issue is *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). In *Alyeska*, the Supreme Court reinforced the "American Rule" that a prevailing litigant is not entitled to collect reasonable attorney's fees from the losing party. There have been several traditional exceptions to the American Rule. Courts may award attorney's fees: (1) as part of the remedy for a willful violation of a court order; (2) against a losing party who has acted in bad faith; and (3) to litigants who have created a common fund for the benefit of others. *Alyeska*, 421 U.S. at 257–59, 95 S.Ct. at 1621–22; E. Larson, *Federal Court Awards of Attorney's Fees* 4 (1981).[4] In *Alyeska*, the Supreme Court acknowledged these exceptions as "assertions of inherent power in the courts to allow attorney's fees in particular situations, unless forbidden by Congress." 421 U.S. at 259, 95 S.Ct. at 1622. The Court held that the inherent power of the federal courts to award fees did not extend to a federal statute containing a "private attorney general" enforcement scheme, reasoning as follows:

Congress has not repudiated the judicially fashioned exceptions to the general rule against allowing substantial attorneys' fees; but neither has it retracted, repealed, or modified the limitations on taxable fees contained in [the Act of Feb. 26, 1853, 10 Stat. 161] and its successors. Nor has it extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted. What Congress has done, however, while fully recognizing and accepting the general rule, is to make specific and explicit provisions for the allowance of attorneys' fees under selected statutes granting or protecting various federal rights.... Under this scheme of things, it is apparent that the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine.

*Id.* at 260–62, 95 S.Ct. at 1623–24. (footnote omitted.)

One commentator observes that there are more than two hundred federal causes of action in which Congress has expressly provided for an award of attorney's fees. M. Derfner, A. Wolf, 1 *Court Awarded Attorney Fees* ¶ 5.01 (1986). Against this background and the Supreme Court's decision in *Alyeska*, the absence of an explicit statutory right to an award of attorney's fees in 7 U.S.C. § 499e(c)(2) for enforcement of the PACA trust provisions is highly persuasive. Moreover, in PACA itself, Congress expressly provided an entitlement to attorney's fees to an appellee who

---

abandoned that position as it was not raised in the memorandum of law later submitted by the debtor. In any event, I find the appropriate rate in this case to be that set forth in 28 U.S.C. § 1961. I presume that the parties will be able to apply section 1961 and agree upon the amount of prejudgment interest due. If not, Sunkist may request a hearing on the issue.

I note also that the debtor argues that any prejudgment interest awarded should not be considered part of the trust claim but should be treated as a general unsecured claim. In light of the statutory purposes of PACA discussed earlier, I conclude that the prejudgment interest is appropriately treated as a component of the trust claim itself. Therefore, I reject the debtor's argument and I will direct that the debtor pay the prejudgment interest to Sunkist forthwith.

4. The three exceptions do not define the entire universe of cases in which courts may grant attorney's fees. For example, a litigant may obligate himself by contract to pay the legal expenses of his adversary. *See generally* M. Derfner, A. Wolf, 1 *Court Awarding Attorney Fees* ¶ 1.02 (1986).

prevails in an appeal from a reparation order for violation of 7 U.S.C. § 499b. *See* 7 U.S.C. § 499g(c). The absence of a similar provision in section 499e(c)(2) is further evidence that Congress did not intend to award attorney's fees to trust beneficiaries under PACA.[5] Therefore, I conclude that Sunkist has no entitlement to an award of attorney's fees.

An order consistent with this memorandum opinion will be entered.

---

**5.** I decline to follow *In re Monterey House, Inc.,* 71 B.R. 244 (Bankr.S.D.Tex.1986) to the extent it holds to the contrary.