**W.C. & A.N. MILLER COMPANIES,**
Plaintiff,

v. `

UNITED STATES of America, Defendant.

**E. Conrad HICKS, Jr., M.D.,**
et al., Plaintiffs,

v.

UNITED STATES of America,
et al., Defendants.

Civil Action Nos. 96–0453
(SS), 97–0350 (SS).

United States District Court,
D. Columbia.

May 6, 1997.

Amy L. Edwards, Christopher A. Myers, Holland & Knight, L.L.P., Washington, DC, for W.C. & A.N. Miller Companies.

Christopher G. Hoge, Patrick T. Hand, Crowley, Hoge & Fein, P.C., Washington, DC, for E. Conrad Hicks, Jr., Ronald Wood, Patricia Wood.

Roderick L. Thomas, Assistant United States Attorney, along with whom Eric H. Holder, Jr., United States Attorney, appeared on the briefs, for Defendants; Jeffrey D. Smith, Major, United States Army, appeared of counsel.

## MEMORANDUM OPINION

SPORKIN, District Judge.

### BACKGROUND

On March 8, 1996, the plaintiff W.C. & A.N. Miller Companies ("Miller") sued the Army under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* ("FTCA"), for damages arising from the United States Army's burial of munitions during World War I on land in Northwest Washington, District of Columbia. On July 19, 1996, the United States filed a motion to dismiss or, in the alternative, for summary judgment. Miller opposed the government's motion, but did not cross-move for summary judgment. On March 21, 1997, in a Memorandum Opinion and Order, the Court denied the defendant's motion and held that the defendant breached its duty to the plaintiff by failing to warn of the buried munitions.

On February 21, 1997, three homeowners who had purchased their property from Miller also filed suit. The homeowners' suit was consolidated with the present suit for administrative convenience. The three homeowners each claim that they suffered a loss of equity when they subsequently sold their homes. The homeowners sue the United States under the FTCA for negligence, public and private nuisance, and trespass. The homeowners sue Miller in common law tort for fraudulent misrepresentation, negligent misrepresentation, and rescission.

On April 2, 1997, the United States filed a "Motion for Reconsideration" of the Court's March 21, 1997 Order, pursuant to Federal Rule of Civil Procedure 59(e). The United States also filed a Motion to Dismiss the claims against it by the homeowners. On April 14, 1997, Miller filed a Motion to Dismiss or for Summary Judgment against the homeowners. The Court held a hearing on these Motions on May 5, 1997.

Based on the arguments, the pleadings, the entire record herein and the law applicable thereto, and for the reasons expressed below, the Court will deny the United States' Motion for Reconsideration, will grant the United States' Motion to Dismiss the home-

owners' claims against the government, and will grant Miller's Motion to Dismiss the homeowners' claims against Miller.

## DISCUSSION

### I. THE COURT WILL DENY THE UNITED STATES' MOTION FOR RECONSIDERATION.

█ A "Motion for Reconsideration," although not expressly provided for in the Federal Rules of Civil Procedure, may be treated as a motion to alter or amend judgment pursuant to Rule 59(e) if it is filed within 10 days of entry of the judgment. *See Derrington–Bey v. District of Columbia Dept. of Corrections*, 39 F.3d 1224, 1226 (D.C.Cir.1994). The government's present motion is timely under Rule 59(e).

█ The primary reasons for granting a Rule 59(e) motion are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *National Trust v. Department of State*, 834 F.Supp. 453, 455 (D.D.C.1993) (quoting *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.), *cert. denied*, 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992)), *aff'd in part and rev'd in part on other grounds sub nom. Sheridan Kalorama Historical Ass'n v. Christopher*, 49 F.3d 750 (D.C.Cir.1995). A Rule 59(e) motion is not a second opportunity to present argument upon which the Court has already ruled, nor is it a means to bring before the Court theories or arguments that could have been advanced earlier.

█ In acting on the government's July 19, 1996 motion in this case, the Court held that the government breached its duty to warn Miller of the buried munitions. The United States argues that the Court could not so hold without the plaintiff first having requested such a disposition because, in doing so, the Court imposed liability on the government without proper notice, without allowing discovery on the merits, and without requiring the plaintiff to demonstrate the merits of their claim.

█ A court may enter summary judgment, *sua sponte*, in favor of a party opposing summary judgment, even if, as in this case, that party has not made a formal cross-motion for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Leahy v. District of Columbia*, 833 F.2d 1046, 1047 (D.C.Cir.1987); 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2720, at 28–34 (2d ed.1983). The critical question for the Court is whether the losing party was "on notice" that it needed to "come forward with all of [its] evidence." *Celotex*, 477 U.S. at 326, 106 S.Ct. at 2554. To be on notice "does not mean that [the defendant] had to receive a formal document called 'notice' or that the district court had to say the words 'you are on notice' or even that the court had to explicitly tell [the defendant], 'I am thinking of ordering summary judgment for [the plaintiff] sua sponte.'" *National Expositions, Inc. v. Crowley Maritime Corp.*, 824 F.2d 131, 133 (1st Cir.1987). Rather, the question is whether, given the particular procedural posture of the case, the defendant had the opportunity to demonstrate that there was a genuine material issue and its opponent was not entitled to judgment as a matter of law. In this case, the government had that opportunity.

At the outset, the Court notes that, prior to the government's July 19, 1996 motion, the parties had engaged in extensive discovery. In fact, the parties requested extensions of time in the dispositive motion schedule in light of the

> substantial number of documents that must be accessed and reviewed. . . . [T]he Department of the Army in Baltimore, Maryland, maintains approximately twenty-five filing cabinets full of documents associated with Spring Valley, the property at issue in this lawsuit.

Joint Motion for Amended Dispositive Motion Schedule (June 7, 1996). The late Honorable Charles R. Richey, who presided over this case until his death, granted the requested extensions to ensure that sufficient time was afforded for discovery.

Despite the voluminous documents reviewed by the parties and those submitted to this Court in connection with the government's July 19, 1996 motion, the government asserts that more discovery is needed. However, the government has been unable to proffer any specific evidence which would materially alter the Court's previously stated rulings in this case.

Relying on *Scott v. District of Columbia*, 101 F.3d 748, 757 (D.C.Cir.1996), the government contends that expert testimony is needed to establish a standard of care. However, this case does not present concepts beyond the realm of common knowledge and everyday experience. The Court need not call upon the advice of an expert to determine that the government owed a duty of care to warn of live munitions it buried in Northwest DC.

The government also asserts that discovery is needed to determine the proper method of burying munitions in the relevant time period. However, in light of the Court's March 21, 1997 ruling, the question is not the propriety of burying live munitions circa 1919; rather, the question is, once live munitions were buried by the government, did the government have a duty to warn of those munitions. Certainly, the method of burial does not absolve the government of its duty to subsequent users of the property to disclose what has been buried under the land— munitions that created a real risk to human life and the danger of property damage.

The questions whether the government had a duty to warn the Miller Companies and whether it provided any such warning were extensively briefed in the government's July 19, 1996 motion. That motion rested in part on the United States' argument that it owed no actionable duty to the plaintiff. The facts and law concerning that issue was the same as those going to the merits of Miller's negligent failure to warn claim. *See Cockrum v. Califano*, 475 F.Supp. 1222, 1226 (D.D.C. 1979) ("[W]here the parties have had full opportunity to present the issues and to contest the proposition that there exist no facts in dispute material to entry of judgment, the Court may enter judgment for a party which has not In haec verba moved for summary

judgment."). That the government had such a duty to warn was determined by the Court, as a matter of law, in its March 21, 1997 Memorandum Opinion and Order. *See W.C. & A.N. Miller Cos. v. United States of America*, 963 F.Supp. 1231, 1242–43 (1997) (citing *Rosenblatt v. Exxon Co.*, 335 Md. 58, 642 A.2d 180 (1994)).

Furthermore, the question whether Miller knew or should have known about the buried munitions or whether it was warned or otherwise put on notice was an essential element of the defendant's affirmative defense that the plaintiff's claims were barred by the effective date of the FTCA and the statute of limitations. Numerous pages of the government's July 19, 1996 motion and other pleadings were devoted to these issues. The government's arguments were considered by the Court and rejected. The government had notice and opportunity to put its case forward. It was not taken by surprise by a premature ruling in any respect.

Based on the foregoing, the Court will deny the United States' Motion for Reconsideration. In so doing, the Court does not in any way prejudice the right of the government to seek full discovery regarding Miller's damages and to inquire into whether those damages were caused by the defendant's actions.

## II. THE COURT WILL GRANT THE UNITED STATES' MOTION TO DISMISS THE HOMEOWNERS' CLAIMS AGAINST IT BECAUSE THEY ARE BARRED BY THE FTCA'S STATUTE OF LIMITATIONS.

█ The government moves to dismiss the homeowner's claims against it on the basis, *inter alia*, that the claims are barred by the FTCA's two-year statute of limitations because the homeowners failed to file administrative claims within two years of the claims' accrual. Because the Court shall grant the government's motion on this basis, it need not address the government's alternative arguments.

█ Under the FTCA's statute of limitations, a tort claim against the government is

barred unless an administrative claim is presented within two years of the date on which the claim accrued. 28 U.S.C. § 2401(b); *United States v. Kubrick*, 444 U.S. 111, 113, 100 S.Ct. 352, 354–55, 62 L.Ed.2d 259 (1979). A cause of action accrues when the injured party discovers—or in due diligence should have discovered—that it has been injured. *Sprint Communications Co., L.P. v. F.C.C.*, 76 F.3d 1221, 1228 (D.C.Cir.1996).

The munitions were unearthed by Miller in January 1993. At least as early as March 1993, the homeowners knew of their injuries. On March 10, 1993, a demand letter was sent by counsel for the homeowners to Miller for "present and future losses and potential losses incurred . . . as a result of the presence of munitions." *See* Supp. to Defendant's Mot. to Dismiss. Despite these undisputed facts, however, the homeowners argue that their cause of action did not accrue until the sale of their homes.

Contrary to the homeowners' view, accrual of the homeowners' claims did not wait until the homeowners had enough information to calculate their damages. *Sprint Communications*, 76 F.3d at 1228. To accept the homeowners' view would frustrate the purpose of the jurisdictional limitations period, which is to encourage the prompt presentation of claims. Under the homeowners' view, they could have waited years to sell their homes, extending the limitations period indefinitely beyond the discovery of the buried munitions.

The homeowners here filed their administrative claims in May 1996, over two years after the unearthing of the material and the demand letter. The homeowners' failure to file an administrative claim within two years of when their claims accrued accordingly bars their claims under the FTCA.

III. THE COURT WILL GRANT MILLER'S MOTION TO DISMISS THE HOMEOWNERS' CLAIMS AGAINST MILLER.

■ In light of the Court's ruling with respect to the government's motion to dismiss the homeowners claims, the Court will decline to exercise supplemental jurisdiction over the homeowner's claims against Miller.

The homeowners and Miller are both citizens of the District of Columbia; thus, there is no diversity jurisdiction. 28 U.S.C. § 1367 provides for supplemental jurisdiction over related claims if a court has original jurisdiction over other claims in the action. However, under § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over a claim if the Court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). *See also LaShawn A. v. Barry*, 87 F.3d 1389, 1397 n. 10 (D.C.Cir. 1996) (en banc) (if federal claims are dismissed before trial, state claims should be dismissed as well) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)). The case is in the damages phase with respect to Miller and the United States. The issue of Miller's liability to the homeowners involves only matters of local law, which are best resolved in District of Columbia Court.

### CONCLUSION

For the reasons set forth herein, the Court will deny the government's Motion for Reconsideration, will grant the government's Motion to Dismiss, and will grant Miller's Motion to Dismiss. Miller's Motion for Summary Judgment will be declared moot. The Court will issue an Order of even date herewith, consistent with the foregoing Memorandum Opinion and setting a schedule for trial on the damages issue remaining in this case.