**FRESH KIST PRODUCE, LLC, Plaintiff,**

v.

**CHOI CORPORATION, INC., d/b/a, Washington Wholesale Produce Company, et al., Defendants.**

Civil Action No. 01–1834(RMU).

United States District Court, District of Columbia.

March 10, 2003.

John Philip Van Beek, Young, Goldman & Van Beek, Alexandria, VA, Michael J. Keaton, David Allen Adelman, Keaton & Associates, Glen Ellyn, IL, for plaintiff.

Mary Jean Fassett, McCarron & Diess, Washington, DC, for defendant, J.C. Watson Company, Inc.

Paul Leonard Pascal, Pascal & Weiss, P.C., Washington, DC, for claimants.

Dimitri Peter Mallios, Margolius, Mallios, Davis, Rider & Tomar, L.L.P., Washington, DC, for claimant, Pete Pappas & Sons, Inc.

## MEMORANDUM OPINION

URBINA, District Judge.

### Granting the Plaintiff's Motion to Amend the Court's Judgment

### I. INTRODUCTION

Plaintiff Fresh Kist Produce ("Fresh Kist"), a seller of perishable produce, brings this motion to collect pre-judgment interest from defendant J.C. Watson ("JCW"), also a seller of perishable produce. Fresh Kist asks the court to amend its July 31, 2002 Memorandum Opinion by adding to its judgment the requirement that JCW pay pre-judgment interest on the disgorged funds. The Memorandum Opinion granted in part Fresh Kist's motion for summary judgment and required JCW to disgorge certain funds. For the reasons that follow, the court grants the plaintiff's motion to modify the judgment and require JCW to pay pre-judgment interest.

### II. BACKGROUND[1]

Both Fresh Kist and JCW are produce sellers falling within the provisions of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.* PACA requires produce buyers to pay proceeds from sales into floating trusts to protect produce sellers when produce buyers default on payment. Pursuant to PACA, if a produce buyer becomes insolvent and is unable to pay its sellers for their perishable goods, the sellers may collect a pro rata payment from the PACA trust, preempting other creditors' claims.

Produce seller Fresh Kist brought the instant case to recover PACA trust funds that produce seller JCW obtained by filing an earlier case, C.A. No. 01–1225 (D.D.C. filed on June 5, 2001), against Washington Wholesale Produce Company ("WWP"), a buyer that bought produce from both Fresh Kist and JCW. The facts of the instant case are intertwined with those of the earlier case (C.A. No. 01–1225). In the earlier case, produce seller JCW asserted that produce buyer WWP owed it $70,946.90 for unpaid invoices for perishable produce commodities. JCW's Compl. (C.A. No. 01–1225). In its June 5, 2001 complaint, JCW plead that WWP was insolvent. *Id.* ¶ 19. WWP paid a total of $59,189.40 to JCW pursuant to a partial settlement and the Consent Order compelling this payment. Consent Order dated Aug. 10, 2001 (C.A. No. 01–1225); Mem. Op. dated July 31, 2002 at 3.

---

1. A detailed recitation of the facts and procedural history of this case can be found in the July 31, 2002 Memorandum Opinion.

On August 28, 2001, Fresh Kist filed, in the instant case, a complaint and a motion for a temporary restraining order and an order establishing a non-party PACA claims procedure. The court issued a temporary restraining order freezing WWP's PACA trust funds and requiring WWP to pay $11,757.50, the amount still owed to JCW pursuant to the Consent Order in C.A. No. 01–1225, into the court's registry. Order Granting Motion for T.R.O. dated Aug. 29, 2001. In its motion for summary judgment, Fresh Kist argued that JCW violated applicable laws by taking WWP's PACA trust funds once it knew WWP was insolvent. Pl.'s Mot. for Summ. J. Ruling on Fresh Kist's and JCW's cross-motions for summary judgment, this court held, *inter alia*, that (1) Fresh Kist is a qualified PACA trust beneficiary, (2) JCW breached and dissipated the PACA trust, (3) JCW did not enhance the value of the trust, and (4) JCW must return $59,189.40 (the funds JCW had demanded from WWP in violation of PACA) to the PACA trust. Mem. Op. dated July 31, 2002 at 5, 18.

In the instant motion, Fresh Kist asks the court to amend its judgment by ordering JCW to pay pre-judgment interest on the disgorgement amount—the $59,189.40 it accepted from WWP in violation of PACA. Pl.'s Mot. to Amend Summ. J. ¶ 7. The plaintiff argues that the interest is needed to compensate the PACA trust beneficiaries for the interest that would have accrued to them had WWP promptly paid the money owed to them pursuant to the provisions governing the PACA trust. *Id.* Fresh Kist argues that the court should award pre-judgment interest calculated from June 5, 2001 (the date of JCW's complaint alleging that WWP was insolvent) through July 31, 2002 (the date of the court's Memorandum Opinion ordering disgorgement). *Id.* at 3.

## III. ANALYSIS

### A. Legal Standard for Amendment of Judgment Pursuant to Rule 59(e)

Federal Rule of Civil Procedure 59(e) motions to alter or amend a judgment must be filed within 10 days of the entry of the judgment at issue. FED.R.CIV.P. 59(e); *W.C. & A.N. Miller Cos. v. United States,* 173 F.R.D. 1, 3 (D.D.C.1997) (citing *Derrington–Bey v. Dist. of Columbia Dep't of Corrections,* 39 F.3d 1224, 1226 (D.C.Cir. 1994)). While the court has considerable discretion in ruling on a Rule 59(e) motion, the reconsideration and amendment of a previous order is an extraordinary measure. *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir.1996) (*per curiam* ) (citations omitted). Rule 59(e) motions "need not be granted unless the district court finds that there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " *Id.* Finally, "[a] Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled," *New York v. United States,* 880 F.Supp. 37, 38 (D.D.C. 1995), nor is it a vehicle for presenting theories or arguments that could have been advanced earlier. *W.C. & A.N. Miller Cos.,* 173 F.R.D. at 3.

### B. The Court Grants the Plaintiff's Motion to Amend the Judgment

At the outset, the court notes that the plaintiff's post-judgment motion for pre-judgment interest constitutes a motion to alter or amend the court's judgment pursuant to Rule 59(e). *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 175, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989). Because the plaintiff filed its motion within the 10–day period set for Rule 59(e) motions, the court will treat the motion as a Rule 59(e) motion to alter or amend the judgment, as opposed to a Rule 60(b) mo-

tion seeking relief from a judgment or order. *United States v. Emmons,* 107 F.3d 762, 764 (10th Cir.1997) (applying the filing-date-determinative rule); *Small v. Hunt,* 98 F.3d 789, 797 (4th Cir.1996) (same).

The underlying judgment ordered disgorgement of $59,189.40 from JCW, but did not order pre-judgment interest. Though the plaintiff did request pre-judgment interest in its motion for summary judgment, the plaintiff failed to detail this request or provide legal support for this request. In its motion to amend judgment, the plaintiff presents a legal argument in support of the request for pre-judgment interest. Although the court disapproves of parties raising arguments that they could have advanced earlier, the court recognizes that the interests of justice and fairness support reviewing the plaintiff's motion. *W.C. & A.N. Miller Cos.,* 173 F.R.D. at 3.

Turning to the merits of the plaintiff's argument for pre-judgment interest, the court determines that an award of pre-judgment interest in this PACA case is within its discretion. Next, the court evaluates the relevant equitable concerns. Finally, the court determines that the equities weigh in favor of an award of pre-judgment interest.

## 1. An Award of Pre-judgment Interest Is Within the Court's Discretion

Because PACA claims arise under federal statute, federal law governs the availability of pre-judgment interest. *In re W.L. Bradley Co.,* 78 B.R. 92, 93 (Bankr.E.D.Pa.1987) (citing *Poleto v. Consol. Rail Corp.,* 826 F.2d 1270 (3d Cir.1987) *overturned on other grounds by Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990)). While no federal statute directly addresses the issue of interest on

PACA judgments, the general federal interest statute, 28 U.S.C.A. § 1961(a) allows interest "on any money judgment in a civil case recovered in a district court." *Id.* The PACA statute is silent on the issue of pre-judgment interest. 7 U.S.C. § 499a *et seq.; E. Armata, Inc. v. Platinum Funding Corp.,* 887 F.Supp. 590, 595 (S.D.N.Y. 1995); *In re Southland + Keystone,* 132 B.R. 632, 641 (9th Cir.BAP 1991). Where a statute is silent on this issue, an award of pre-judgment interest lies within the court's discretion and the court may fashion a remedy to enforce congressional intent. *E. Armata, Inc.,* 887 F.Supp. at 595 (citing *Rodgers v. United States,* 332 U.S. 371, 373, 68 S.Ct. 5, 92 L.Ed. 3 (1947)). The Ninth Circuit has ruled that district courts have the discretion to award reasonable pre-judgment interest to PACA claimants when the award is needed to protect the interests of PACA claimants. *Middle Mountain Land & Produce, Inc. v. Sound Commodities Inc.,* 307 F.3d 1220, 1226 (9th Cir.2002).

Congress enacted PACA to protect produce sellers from slow payment as well as non-payment. *E. Armata, Inc.,* 887 F.Supp. at 595; *Morris Okun, Inc. v. Harry Zimmerman, Inc.,* 814 F.Supp. 346, 351 (S.D.N.Y.1993). Courts have consistently awarded pre-judgment interest to compensate PACA trust beneficiaries (produce sellers) where defendant PACA trustees (produce buyers) failed to make adequate payments. *Id.; Gullo Produce Co. v. A.C. Jordan Produce Co.,* 751 F.Supp. 64, 68 (W.D.Pa.1990); *In re W.L. Bradley Co.,* 78 B.R. at 94; *In re Monterey House Inc.,* 71 B.R. 244, 248 (Bankr.S.D.Tex.1986). These awards are consistent with Congress' intent to promote prompt and full payment to produce sellers.

This case is different from cases involving PACA trust beneficiaries (produce sellers) suing PACA trustees (pro-

duce buyers) for payments due, however, because this case involves a PACA trust beneficiary (produce seller Fresh Kist) suing another trust beneficiary (produce seller JCW) for illegally collecting from the PACA trustee (produce buyer WWP). Here, the congressional purpose of promoting prompt payment is less obvious. The interest Congress expressed in produce sellers' receiving prompt and full payment from produce buyers still applies in the present situation, though in an attenuated manner. Trustees (produce buyers) cannot make prompt payment to trust beneficiaries (produce sellers) if one beneficiary has illegally withdrawn more than its pro rata share of funds from the PACA trust. Therefore, whether the cause of slow payment is the trustee's intransigence or the interference of another trust beneficiary is irrelevant; the congressional purpose of securing prompt payment for all beneficiaries is similarly frustrated.

### 2. Equitable Concerns Require an Award of Pre-judgment Interest

■ Although prior cases interpreting PACA do not provide a precise answer to the question before this court, they do establish a clear precedent for granting pre-judgment interest where equitable concerns and fairness so require. *E.g.,* *Tray–Wrap, Inc. v. Meyer,* 1994 WL 710804, at *7 (S.D.N.Y. Dec.20, 1994). In determining whether to award pre-judgment interest, the court considers the following factors: (1) the need to make the plaintiff whole, (2) the degree of wrongdoing on the part of the defendant, (3) the availability to the plaintiff of investment opportunities, (4) whether plaintiff delayed in bringing the action, and (5) other considerations of fairness. *Osterneck,* 489 U.S. at 176, 109 S.Ct. 987.

■ Applying the first factor, the court determines that pre-judgment interest is necessary to fully compensate the plaintiff and the other beneficiaries (produce buyers) of WWP's PACA trust. *Id.* While the funds were in the hands of JCW, the rightful owners (the PACA trust beneficiaries) could not earn interest on the funds. Each PACA beneficiary's pro rata share, including the plaintiff's, was diminished not only by the $59,189.48 improperly accepted by JCW, but also by the interest that amount would have accumulated had it remained in the trust.

Turning to the second consideration, the court concludes that the defendant's culpability level is low. *Id.* In *Frederick County Fruit Growers Ass'n v. Martin,* the court affirmed the grant of pre-judgment interest to the plaintiff workers association because the lower court found that the growers knowingly underpaid their workers contrary to federal law. 968 F.2d 1265, 1275 (D.C.Cir.1992). Here, the court concluded in its Memorandum Opinion that the "actions that JCW undertook to collect PACA benefits were contrary to law." Mem. Op. dated July 31, 2002 at 13. Although the court determined that JCW knew that WWP, the PACA trustee, was insolvent when it sought and accepted $59,189.48 from the trust in violation of 7 U.S.C. § 499a *et seq.,* the court did not go so far as to find bad faith on the part of JCW. *Id.* at 12, 18. Therefore, the PACA violation reflects a lower "degree of personal wrongdoing on the part of the defendant" than existed in *Frederick County Fruit Growers Ass'n.* 968 F.2d at 1275.

The court cannot weigh the third factor because the record contains no evidence regarding whether the plaintiff had an available investment opportunity. Considering the fourth factor, the court concludes that the plaintiff did not delay bringing an action against JCW for its unlawful acceptance of trust funds. *Id.* The plaintiff initiated this action on August, 28, 2001, less than two months after JCW's PACA

violation (when JCW began its proceedings against WWP that resulted in the payment of $59,189.40 from the PACA trust to JCW). Compl.; JCW's Compl. (C.A. No. 01–1225); Consent Order dated Aug. 10, 2001 (C.A. No. 01–1225). The two months between JCW's PACA violation and the plaintiff's claim in this case falls within the permissible time frame recognized in *In re W.L. Bradley Co.*, where the court found no inequity when the plaintiff waited eight months to file a claim under PACA. 78 B.R. at 94.

Finally, fairness demands an award of pre-judgment interest.[2] *Osterneck*, 489 U.S. at 176, 109 S.Ct. 987. Congress enacted the PACA provisions "to increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them." *In re Bradley Co.*, 78 B.R. at 93 (quoting H.R. No. 98–543, 98th Cong., 1st Sess. 3 (1983)). Congress created PACA to remedy the failure of buyers to pay for goods and to do so in a timely manner. *Id.* This suggests that Congress was concerned not only with sellers' need to enforce claims against buyers, but with their ability to do so quickly. *Id.; see also Morris Okun,*

*Inc.*, 814 F.Supp. at 351 (explaining that "failure to make [a pre-judgment interest] award may create a disincentive to prompt payment to suppliers and encourage collection litigation while financially strapped purchasers fend off creditors, contrary to the congressional intent evidenced in PACA."). An award of pre-judgment interest effectively remedies the harm caused by payment delays by providing to the plaintiff the amount of interest it would have earned had the payment occurred without delay. The argument remains salient where the defendant party is not a trustee, but a trust beneficiary. *Cf. id.*

Accordingly, the plaintiff is entitled to pre-judgment interest from the date of the PACA violation through the date of the entry of the court's judgment. *E. Armata*, 887 F.Supp. at 595 (ordering pre-judgment interest accruing from the date of default of payment). JCW must pay interest on all funds received from WWP on or after June 5, 2001. Interest is due from the date JCW received the post June 4, 2001 payments from WWP up to July 31, 2002, the date of the court's Memorandum Opinion ordering disgorgement, and shall be

2. Describing the court's July 31, 2002 Memorandum Opinion, the defendant argues, "this Court acknowledged that it was crafting statutory requirements not provided for by Congress." Def.'s Opp'n at 2. The defendant relies on this statement to conclude that ordering payment of pre-judgment interest would be unfair because the defendant did not have notice that its actions would warrant such an award. *Id.* at 2–3. This argument mischaracterizes the court's holding. Rather, the court stated that it is

   reluctant to fashion statutory requirements not provided by the legislature. In this situation, however, the "race to the courthouse" scenario, when the winning beneficiary keeps most or all the trust funds, constitutes an absurd result contrary to Congress' intent and contrary to this court's interpretation of the relevant law.

Mem. Op. dated July 31, 2002 at 15 (internal citations omitted). The court's reference to fashioning statutory requirements is merely an acknowledgment of the well-established principle that courts should defer to the congressional purpose behind the statute. *In re Bradley Co.*, 78 B.R. at 93.

   In this case, the PACA provision was enacted with the intent to protect all trust beneficiaries equally. *Supra* at 5–9. To fulfill this goal, courts have consistently interpreted this statute through the lens of congressional intent as rejecting the "first in time, first in right" theory as a method of protecting all beneficiaries equally. Mem. Op. dated July 31, 2002 at 10. Therefore, the defendant's assertion that this court *created* a statutory requirement is disingenuous.

paid at the statutory rate. 28 U.S.C.A. § 1961; *Morris Okun,* 814 F.Supp. at 351 (limiting interest amount to the statutory rate).

## IV. CONCLUSION

For all these reasons, the court grants the plaintiff's motion to amend the order granting summary judgment by adding an award of pre-judgment interest. JCW shall pay the interest due within 20 calendar days of the filing of this Memorandum Opinion and the accompanying order. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this ____ day of March 2003.

## *ORDER*

### GRANTING THE PLAINTIFF'S MOTION TO AMEND THE COURT'S JUDGMENT

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this ____ day of March 2003, it is

**ORDERED** that the plaintiff's motion to amend the court's judgment is **GRANTED**.

**SO ORDERED**.