In re FLEMING COMPANIES,
INC., Debtor.

Cavendish Farms, et al., Plaintiffs,

v.

Fleming Companies, Inc.,
et al., Defendants.

Bankruptcy No. 03–10945 (MFW).
Adversary No. 03–56207 (MFW).
Civ. No. 03–1049–SLR.

United States District Court,
D. Delaware.

Nov. 8, 2004.

---

Richard H. Cross, Jr., Esquire of Cross & Simon, LLC, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: Michael J. Keaton, Esquire, Mary E. Gardner, Esquire of Keaton & Associates, Palatine, Illinois.

Christopher James Lhulier, Esquire of Pachulski, Stang, Ziehl, Young & Jones, P.C., Wilmington, Delaware. Counsel for Defendants. Of Counsel: Richard L. Wynne, Esquire of Kirkland & Ellis, Los Angeles, California and James H.M. Sprayregen, Esquire, Timothy D. Elliott, Esquire, Jeffrey R. Miller, Esquire of Kirkland & Ellis, Chicago, Illinois.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

On November 18, 2003, defendants filed a motion to withdraw the bankruptcy reference pursuant to 28 U.S.C. § 157(d). The motion was granted. Now before the court is defendants' motion for summary judgment against Dole Packaged Foods and Del Monte (D.I.18), plaintiffs Dole Packaged Foods' and Del Monte's cross motion for summary judgment (D.I.20), plaintiffs' motion for summary judgment directed to "battered and coated produce" (D.I.27), and plaintiffs' motion for partial summary judgment on fees and interest charges. (D.I.32)

## II. BACKGROUND

Defendants are "food, grocery and general merchandise wholesaler[s] and distributor[s]" that bought and sold processed food products in interstate commerce. (D.I. 1 at 2) On April 1, 2003, defendants initiated bankruptcy proceedings under Chapter 11 of the United States Bankruptcy Code. *Id.* Since filing the bankruptcy petition, defendants have continued to operate their business as debtors-in-possession. *Id.*

Plaintiffs are ten independent corporations, each of which sold wholesale quantities of various food products to defendants. *Id.* On September 26, 2003, plaintiffs filed an adversary complaint in bankruptcy court alleging violations of the Perishable Agricultural Commodities Act ("PACA"). *See* 7 U.S.C. § 499a *et. seq.* (2004).

PACA was intended to protect suppliers of perishable agricultural products from the risk that a wholesale buyer of produce would be unable to pay for the goods. *See generally Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc.,* 307 F.3d 666, 669 (7th Cir.2002); *Magic Rest. v. Staiano,* 205 F.3d 108, 112 (3d Cir.2000). Unlike other creditors, an interest in the goods themselves is of little protection to such suppliers because the goods are marketable for a finite amount of time. To alleviate this risk, Congress provided three types of protections under PACA. First, the act prohibits "unfair conduct" by entities in the agricultural commodities business. *See* 7 U.S.C. § 499b (2004). Second, it requires any entity carrying on "the business of a commission merchant, dealer, or broker" in the agricultural field to be licensed by the Secretary of Agriculture. 7 U.S.C. § 499c. Third, and of relevance to the dispute at bar, it created a "trust for the benefit of all unpaid suppliers or sell-

ers" of agricultural commodities. 7 U.S.C. § 499e(c)(2). The trust is funded with "agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities." *Id.* The trust remains in place until all "the sums owing in connection with such transactions have been received by such unpaid suppliers." *Id.* Unpaid suppliers who qualify under PACA are given an interest in the buyer that is superior to any other lien or secured creditor. *See Magic Rest.,* 205 F.3d at 112.

■ In order to be protected by PACA, plaintiffs have to show: (1) the goods in question were perishable agricultural commodities; (2) the commodities were received by a commission merchant, dealer or broker; and (3) they provided written notice of their intent to enforce PACA. At issue in three of the motions is whether canned goods and frozen potatoes are perishable agricultural commodities. In the fourth motion, the issue is whether the interest and attorney fees associated with defendants' overdue payments can be taken out of the PACA trust.

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and

disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. CROSS MOTIONS FOR SUMMARY JUDGMENT

■ Defendants argue that PACA does not cover the canned goods they purchased from plaintiffs Dole Packaged Food and Del Monte because canned goods do not constitute fresh produce, as defined under PACA. Plaintiffs argue that the definition of "fresh," as promulgated by the United States Department of Agriculture ("USDA"), encompasses the canned goods

sold to defendants. This court agrees with defendants.

■ PACA's application is limited to "perishable agricultural commodit[ies]," defined as fresh fruits or vegetables "of every kind and character." 7 U.S.C. § 499a (2004). PACA was enacted to protect "[p]roducers of perishable agricultural goods [who] in large part [are] dependent upon the honesty and scrupulousness of the purchaser." *Magic Rest.*, 205 F.3d at 110. In 1984, PACA was amended to give unpaid suppliers an interest in the trust corpus of a bankrupt buyer that is superior to the interest of any other creditor. *Id.* at 112. Congress reported that this added protection was necessary because sales of perishable agricultural commodities " 'must be made quickly or they are not made at all .... Under such conditions, it is often difficult to make credit checks, conditional sales agreements, and take other traditional safeguards.' " *Id.* at 111 (quoting H.R.Rep. No. 98–543, at 3 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406).

Congress vested regulatory authority under PACA with the USDA. *See* 7 U.S.C. § 499(*o*). The USDA expanded upon Congress's definition of "perishable agricultural commodity" in its regulations, stating:

Fresh fruits and fresh vegetables include all produce in fresh form generally considered as perishable fruits and vegetables, whether or not packed in ice or held in common or cold storage, but does not include those perishable fruits and vegetables which have been manufactured into articles of food of a different kind or character. The effects of the following operations shall not be considered as changing a commodity into a food of a different kind or charac-

ter: Water, steam, or oil blanching, chopping, color adding, curing, cutting, dicing, drying for the removal of surface moisture; fumigating, gassing, heating for insect control, ripening and coloring; removal of seeds, pits, stems, calyx, husk, pods, rind, skin, peel, et cetera; polishing, precooling, refrigerating, shredding, slicing, trimming, washing with or without chemicals; waxing, adding of sugar or other sweetening agents; adding ascorbic acid or other agents to retard oxidation; mixing of several kinds of sliced, chopped, or diced fruit or vegetables for packaging in any type of containers; or comparable methods of preparation.

7 C.F.R. § 46.2(u) (2003).[1]

It is evident from the above language that the USDA has included within the scope of PACA's protection a broad range of processes characterized as **not** altering the essential nature of "fresh" fruits and vegetables. Indeed, the USDA recently amended its definition of "fresh" to include "battered" and "coated" fruits and vegetables. *See Fleming Companies, Inc. v. USDA*, 322 F.Supp.2d 744, 749 (E.D.Tex. 2004). Despite the wide net thrown out by the USDA in its regulation, however, the court declines to characterize canned goods as "fresh," for several reasons.

In the first instance, such a characterization flies in the face of PACA's legislative history. As noted above, Congress created the trust at issue in order to protect suppliers of "perishable" agricultural goods because sales of such goods must be made quickly, while the goods are still marketable. Common sense informs the notion that suppliers of canned goods are not forced to make such quick sales be-

---

1. In 2004, the USDA amended its definition to include "coating" and "breading." 7 C.F.R. § 46.2(u) (2004).

cause the canning process renders their products nonperishable for an extended period of time, certainly well beyond the time it takes to negotiate a sale.

Such a characterization likewise is contrary to the ordinary meaning of the words chosen by Congress to define the statutory territory. More specifically, Congress used "fresh" to describe a "perishable agricultural commodity," the common definition of which explicitly excludes canned goods. *See* The American Heritage Dictionary 534 (2d ed.1984) (defining "fresh" as "[n]ot preserved, as by canning, smoking or freezing"). The rationale of PACA and the common definition are in accord. There is no indication that Congress intended something other than the ordinary meaning. Therefore, PACA was not intended to include canned goods.

Furthermore, in similar legislation, Congress has specifically excluded canned goods from the ambit of "perishable" agricultural commodities. For instance, in 1936 Congress promulgated another act that dealt with perishable agriculture commodities, the Walsh–Healey Act. *See* Act of June 30, 1936, ch. 881, 49 Stat.2036. The act was intended to use the power of federal contracts to raise employee wages. *Id.* The act, however, did not apply to contracts for "perishables." *See* 41 U.S.C. § 43 (2004); § 9, 49 Stat. at 2039. With respect to the Walsh–Healey Act, the USDA explicitly defined "perishable" as not including canned products. *See* 41 C.F.R. § 50–201.2(b) (2004).[2] Without a reason to conclude that Congress or the USDA is using "perishable" to mean something different under PACA than under the Walsh–Healey Act, this court infers

that "perishable" does not include canned goods.

Finally, at least one other court has found that when fruits have undergone a preservation process, they no longer can be characterized as "fresh." *See In re L. Natural Foods Corp.*, 199 B.R. 882 (Bankr. E.D.Pa.1996) (holding that dried apricots and prunes were not "fresh" because the drying process removed so much internal water that the nature of the item had changed).

In sum, despite the broad language employed by the USDA in its regulation, it does not specifically include "canning" among those processes characterized as **not** altering the essential nature of a "fresh" fruit or vegetable. Absent such specific direction from the USDA, there is no persuasive evidence that canned goods otherwise were intended to be or are included within the scope of PACA's protection. In sum, the court declines to ignore PACA's plain language and legislative history or to discard common sense in order to embrace plaintiffs' position.

## V. MOTION FOR SUMMARY JUDGMENT ON BATTERED AND COATED CLAIMS

Plaintiffs' motion for summary judgment with respect to their battered and coated potato products is denied without prejudice to renew. At issue in this case is not only whether plaintiffs' products are protected under PACA, but also whether the USDA's inclusion of battered and coated potatoes is a valid administrative action. This court is not bound by the decision of the United States District Court for the

---

**2.** The legislative history of the Walsh–Healey Act does not indicate the rationale behind the exception, nor does it indicate what Congress intended "perishable" to mean. The exception was in the original act that notably was enacted only six years after PACA. Four years

after the Walsh–Healey Act, PACA was amended to add cherries in brine in the definition of "perishable agricultural commodity," but the rest of the definition remained the same. *See* June 29, 1940, ch. 456, § 2, 54 Stat. 696.

Eastern District of Texas with respect to its determination that the USDA's amendment is valid. At this time, the parties have not briefed the court on the issue of administrative validity, and this court declines to consider whether plaintiffs' frozen potato products are included in the USDA's definition of "fresh" before it considers the validity of the amended definition. To enable the parties to file more complete motions for summary judgment on this issue, discovery is opened for ninety (90) days with respect to plaintiffs' battered and coated french fries. At the close of discovery, the parties are expected to file any necessary motions for summary judgment.

## VI. MOTION FOR PARTIAL SUMMARY JUDGMENT ON PREJUDGMENT INTEREST AND ATTORNEY FEES [3]

A trust created pursuant to PACA is available for the payment of all "sums owing **in connection with such transactions**." 7 U.S.C. § 499e (emphasis added). Plaintiffs claim attorney fees and prejudgment interest are sums owing in connection with the sales at issue. Defendants argue that PACA is narrower and only the amount owed for the commodities is covered by the trust fund.

### 1. Attorney Fees

▇▇▇▇ Under the American Rule, a winning party is not automatically entitled to attorney fees. Attorney fees can be awarded if there is a statutory basis or evidence of Congressional intent to award fees. *See generally Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Section 499e makes no provision for attorney fees. Other sections of PACA, however, do allow for attorney fees. *See, e.g.*, 7 U.S.C. § 499g(c) (providing fees to a party who successfully appeals from a reparation order for violation of § 499b). Clearly, Congress understood that the award of attorney fees in the trust provision would require express language in the statute. If Congress had intended the trust provision to include àttorney fees, it would have included such a statement. *See Middle Mountain Land and Produce v. Sound Commodities, Inc.*, 307 F.3d 1220, 1225 (9th Cir.2002); *Hereford Haven, Inc. v. Stevens*, No. 3:98–CV–0575, 1999 WL 155707, at *4 (N.D.Tex. March 12, 1999); *Valley Chip Sales, Inc. v. New Arts Tater Chip Co.*, No. 96–2351, 1996 WL 707028, at *6 (D.Kan. Oct.10, 1996); *In re W.L. Bradley Co.*, 78 B.R. 92, 95 (Bankr.E.D.Pa. 1987).

▇▇▇▇ In addition to a statutory basis, attorney fees can be awarded if there is a contractual basis for them. *See Middle Mountain Land and Produce*, 307 F.3d at 1225 (citing *Alyeska Pipeline Serv. Co.*, 421 U.S. at 257–59, 95 S.Ct. 1612). In this case, some of the plaintiffs included provisions for attorney fees in their invoices sent to defendants. Defendants argue that the attorney fees provisions included

---

**3.** Defendants filed a motion to strike plaintiffs' reply memorandum of law in support of plaintiffs' motion for summary judgment. Defendants argued that plaintiffs' reply contained "new arguments, new authorities, and new evidence." (D.I. 44 at 2) Defendants, however, fail to direct the court's attention to any arguments, authorities or evidence in the reply memorandum that are not included in the plaintiffs' original brief. Nor do the de-

fendants provide evidence regarding which material in the reply brief "should have been included in a full and fair opening brief." Local Rule 7.1.3(c)(2). From what the court has discerned, everything in plaintiffs' reply memorandum is either in the original brief or in response to defendants' arguments in opposition of plaintiffs' motion. Therefore, defendants' motion is denied.

in the invoices were not binding provisions of a contract because they materially altered the agreement. Defendants further argue that different laws apply to each of the plaintiffs because they are each "residents" of different states.

This court did not find any statutory difference between the states at issue because each has adopted U.C.C. § 2–207 verbatim.[4] *See generally* Cal. Com.Code § 2207 (West 2002), Fla. Stat. ch. 672.207 (2004), Tex. Bus. & Com.Code Ann. § 2–207 (Vernon 1994), Pa. Stat. Ann. tit. 13 § 2207 (West 1984). Pursuant to U.C.C. § 2–207, the attorney fees included in plaintiffs' invoices are considered "sums owing in connection with [the] transaction." *See Country Best v. Christopher Ranch, LLC,* 361 F.3d 629 (11th Cir.2004) (per curiam); *Weis–Buy Serv., Inc. v. Paglia,* 307 F.Supp.2d 682 (W.D.Pa.2004); *E. Armata, Inc. v. Platinum Funding Corp.,* 887 F.Supp. 590 (S.D.N.Y.1995). Despite defendants' own indication that the consideration of whether a change materially alters a contract is one that depends on the unique facts of every case, they have not asserted any facts that would indicate that the attorney fees provisions at issue materially changed their contracts with plaintiffs. (D.I. 38 at 13), citing *Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie–Tynes Mfg. Co.,* No. 99–4042, 2000 WL 147392, at \*9 fn. 10 (10th Cir. Feb.4, 2000)

Plaintiffs Cavendish Farms, DiMare Fresh, Dole Fresh Fruit, Dole Fresh Vegetables and Heinz included clauses in their invoices requiring defendants to pay attorney fees associated with collecting overdue payments. (D.I. 41 at Ex. A, B, C, D, E)

These plaintiffs are entitled to collect attorney fees because the fees are directly associated with the transactions at issue. The other plaintiffs, however, are not entitled to attorney fees because there is no contractual or statutory basis for such an award.

### 2. Prejudgment Interest

 Prejudgment interest can be awarded to a party at the court's discretion. When implementing PACA, Congress intended to protect agricultural commodity dealers when buyers failed to pay for purchased goods. The act gives an unpaid supplier an interest that is superior to all other creditors, which illustrates Congress's intent to provide suppliers with the utmost protection with respect to monies owed. This superior interest is broad, as it encompasses all "sums owing in connection with [the] transaction." 7 U.S.C. § 499e(c); *see also Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.,* 222 F.3d 132, 138 (3d Cir.2000). Allowing a buyer to make a late payment without paying the appropriate interest, and accumulating the interest for itself, is antithetical to the purpose of PACA. *See generally Middle Mountain Land and Produce,* 307 F.3d at 1224; *Valley Chip Sales, Inc.,* No. 96–2351, 1996 WL 707028, at \*6; *E. Armata, Inc.,* 887 F.Supp. at 595; *In re W.L. Bradley Company, Inc.,* 78 B.R. at 94.

Plaintiffs Cavendish Farms, DiMare Fresh, Dole Fresh Fruit, Dole Fresh Vegetables and Heinz included a provision for interest on late payments in their invoices.

---

4. Plaintiff Cavendish is a Canadian corporation that shipped fruits and vegetables to various locations throughout the United States. (D.I. 41 at 6) Heinz is a Pennsylvania corporation. (*Id.*) Dole Fresh Fruit and Dole Fresh Vegetable and are both California corpora-

tions. (*Id.*) Defendant Fleming is a Texas corporation. (*Id.*) Although the contracts at issue could be controlled by laws of other states, defendants do not argue that the contracts are governed by any state laws other than those cited.

Once included in the agreement, the interest is explicitly connected to the sales transaction. If successful, these plaintiffs are entitled to prejudgment interest at the rate cited in the sales contract. The other plaintiffs are also legally entitled to prejudgment interest at a rate to be determined, if necessary, upon the conclusion of the case.

## VII. CONCLUSION

For the stated reasons, defendants' motion for summary judgment against plaintiffs Del Monte Foods and Dole Packaged Foods is granted. Plaintiffs' Del Monte Foods. and Dole Packaged Foods motion for summary judgment is denied.

Plaintiffs' motion for summary judgment with respect to battered and coated produce is denied without prejudice to renew. Discovery on the issue is opened for ninety days and any new or renewed motions for summary judgment are due two weeks after that.

Plaintiffs' motion for summary judgment with respect to their right to attorney fees and costs is granted in part and denied in part. Plaintiffs' motion with respect to attorney fees is granted as to plaintiffs Cavendish Farms, DiMare Fresh, Dole Fresh Fruit, Dole Fresh Vegetables and Heinz. Plaintiffs' motion for summary judgment with respect to attorney fees is denied as to plaintiffs Dimare Fresh, Dimare–Tampa, and Dole Distribution–Hawaii. Plaintiffs' motion with respect to prejudgment interest is granted as to all plaintiffs. Defendants' motion to strike plaintiffs' reply memorandum of law in support of plaintiffs' motion for summary judgment is denied. An order consistent with this memorandum opinion shall issue.